UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTINA LENOIR,                          :

     Plaintiff,                              :

                                   CIVIL ACTION NO.

v.                                          :

                                   1:05-CV-02559-MHS

BELLSOUTH                                   :
TELECOMMUNICATIONS, INC.,

                       :

     Defendant.                              :

                       :

## **ORDER**

There are several motions pending before the Court, including cross motions for summary judgment. The Court's rulings and conclusions are set forth below.

Background

This is an action for the denial of benefits and wrongful discharge pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). This action began on March 15, 2004, when plaintiff Christina Lenoir filed suit in the Circuit Court of Jefferson County, Alabama, against her previous employer, defendant BellSouth Telecommunications, Inc. ("BST"). On April 9,

2004, BST removed the action to the U.S. District Court for the Northern District of Alabama.

Defendant filed a motion to transfer to this Court, and plaintiff filed a motion to remand to state court. On September 21, 2005, the U.S. District Court for the Northern District of Alabama held that the plan under which plaintiff sued was an ERISA plan and denied plaintiff's motion to remand. The Alabama district court also held that consideration of all relevant factors favored transfer to this Court and granted defendant's motion to transfer.

In her amended complaint, plaintiff alleges that her former employer, BST, denied her benefits under the terms of a Short Term Disability Plan ("STD Plan") in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132.  She also alleges that defendant terminated, and threatened to terminate, her employment in order to interfere with her benefits in violation of ERISA § 510, 29 U.S.C. § 1140. Plaintiff also reserves the right to reconsider her ERISA action as one arising under Georgia law if the court of appeals determines that ERISA does not apply to BST's STD Plan.  Finally, plaintiff alleges that she became eligible for Long

AO 72A
(Rev.8/82)

Term Disability Plan ("LTD Plan") benefits during the pendency of this case and that she is now entitled to such benefits.

BST hired plaintiff in 2000 as a Customer Service Representative, a position that was later changed to Sales Associate. She worked in a call center with approximately 200 people in Conyers, Georgia, and her duties included answering incoming customer calls and making sales during those calls. She was a non-management, craft employee represented by a labor union, the Communication Workers of America ("CWA" or "Union"). BST and the Union negotiated a collective bargaining agreement ("CBA") which governed plaintiff's employment and controlled disability benefits and leaves of absence. Plaintiff worked in the same building and on the same floor with her supervisor, management, center leader, and other members of local BST management.

In late April of 2002, plaintiff left work. On April 24, 2002, she checked herself in at Peachford Behavioral Health System of Atlanta ("Peachford") complaining that she was "going to hurt somebody." Pl.'s Mot. for Summ. J., Tab 11 at 2. Peachford discharged her on April 28, 2002.

AO 72A
(Rev.8/82)

Aetna[1] is the third-party claims administrator of defendant's STD and LTD Plans.  Aetna approved plaintiff for STD Plan benefits from April 29, 2002 through June 16, 2002.

Plaintiff returned to work for a full day on June 17, 2002, and a half day on June 19, 2002. Also on June 19, 2002, Aetna reported a relapse and continued to process plaintiff's claim for benefits.  Aetna referred plaintiff for a psychological evaluation as part of an independent evaluation to determine her functional psychological abilities and limitations.  Dr. Kristin Fiano examined plaintiff on July 29, 2002, and completed an Independent Medical Evaluation ("IME").  Aetna concluded that the IME failed to support disability.  In a letter dated August 20, 2002, Aetna informed plaintiff that her physicians had not given them sufficient objective medical data to support her being disabled from any type of work, as defined in the STD Plan.  Therefore, Aetna reinstated plaintiff's benefits effective June 19, 2002 and June 21, 2002 through July 29, 2002, the day of the IME, and denied her benefits after this period.

---

[1] Broadspire, formerly known as Kemper, served as the plans' administrator.  Aetna acquired Broadspire and is its successor as claims administrator.  The Court will refer to defendant's  claims administrator as Aetna throughout this order.

4

Plaintiff returned to work on September 3, 2002. On that same day, plaintiff's coworkers advised BST management that plaintiff was making homicidal threats in the workplace against her local management. Plaintiff was relieved of duty with pay, and BST began an investigation into the matter.

On September 4, 2002, plaintiff was admitted again to Peachford complaining that she was "going to hurt somebody." Pl.'s Mot. for Summ. J., Tab 12 at 1.

BST strictly prohibits violence or threats of violence in the workplace, and any employee violating this policy is subject to immediate dismissal. BST Security investigated the reports of plaintiff making threats and interviewed several witnesses who independently confirmed that plaintiff had made threats during various conversations. After reviewing BST's security report and the statements of plaintiff's coworkers, BST Director Dallas LeDuff concluded that plaintiff had threatened to kill her managers in violation of BST policy. BST informed plaintiff in writing that effective September 5, 2002, she was being terminated for misconduct with regard to the incidents that occurred on September 3, 2002.

5

Peachford discharged plaintiff on September 13, 2002. Dr. Asaf Aleem provided plaintiff's final diagnosis as major depression/biopolar disorder, polysubstance abuse, and post traumatic stress disorder. Plaintiff testified in her deposition in this case that she did not recall making threatening comments to her coworkers.

Plaintiff has now moved for summary judgment on her ERISA § 502(a)(1)(B) claim for the denial of STD Plan benefits and LTD Plan benefits. Defendant has also moved for summary judgment on plaintiff's ERISA §§ 502(a)(1)(B) and 510 claims.

Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of

6

the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The movant bears the initial responsibility of asserting the basis for his motion. Celotex, 477 U.S. at 323; Apcoa, Inc. v. Fidelity National Bank, 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." Id. at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is material when it is identified by the controlling substantive law as an essential element of the non-moving party's case.  <u>Anderson</u>, 477 U.S. at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  <u>Id.</u>  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative."  <u>Anderson</u>, 477 U.S. at 249-50.  Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of <u>every</u> element material to that party's case so as to create a genuine issue for trial.

The Rule 56 standard is not affected by the filing of cross motions for summary judgment: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2720 at 335-36 (3d

8

ed. 1998).  Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts.  See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984).

Discussion

The law is well-settled that a plaintiff in an ERISA action must exhaust available administrative remedies before suing in federal court. Perrino v. S. Bell Telephone & Telegraph Co., 209 F.3d 1309, 1315 (11th Cir. 2000).  The exhaustion requirement is grounded in several important policy rationales, and as a result, the Court strictly enforces the exhaustion requirement with certain caveats reserved for exceptional circumstances.  Id.  A district court has the sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place. Id. at 1316.

The CBA that governed plaintiff's employment set forth the grievance and arbitration procedures for claims of wrongful discharge and the denial of STD Plan benefits.  As an initial matter, plaintiff argues that the grievance and

9

arbitration procedures were not referred to in the summary plan description in violation of 29 CFR § 2560.503-1(b)(2) and 29 U.S.C. § 1133.  Therefore, plaintiff contends that defendant should not gain advantage from its violation of ERISA, and plaintiff's failure to exhaust her remedies should be excused. Plaintiff continues that despite the technical violations of ERISA, she used the grievance procedure to the full extent that she had the power to do so.  Plaintiff's argument is without merit.  The Court will not excuse plaintiff's failure to exhaust her administrative remedies because defendant's alleged technical violations of ERISA did not prevent plaintiff from using the grievance procedure. Perrino, 209 F.3d at 1317.

A.  ERISA § 510

The exhaustion requirement applies to plaintiff's ERISA § 510 claim for wrongful discharge. Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir. 1990), abrogated on other grounds in Murphy v. Reliance Standard Life Ins. Co., 247 F.3d 1313, 1314 (11th Cir. 2001).  Because plaintiff had worked at BST for more than six (6) months, she was subject to the full grievance and arbitration procedures set forth in Articles 21 and 23 of the CBA

10

to challenge her claim of wrongful discharge.[2] The grievance procedure required BST and the Union to meet and to attempt to resolve an employee's grievance in a series of conferences or steps. If BST and the Union could not resolve the employee's grievance through these conference sessions, then the Union could take the dispute to binding arbitration.

After BST terminated plaintiff's employment, plaintiff filed a grievance with the Union asserting that she had been wrongfully discharged. The Union pursued plaintiff's grievance through the first few steps of the grievance procedure. In a letter dated July 29, 2003, a Union representative informed plaintiff that BST had refused to settle her grievance by placing her back on the payroll. The letter further explained that after receiving BST's final answer, her grievance was sent to the Union Arbitration Review Committee to determine if the Union could prevail at arbitration with her case. The letter continued that the committee had denied her grievance for arbitration based on the number of witnesses who would testify against plaintiff about hearing her make threats. The

---

[2] The CBA provides that if "the employee has more than 6 months of seniority, a charge that the discharge was without just cause will be subject to the full grievance and arbitration procedures set forth in Articles 21 and 23." Def.'s Mot. for Summ. J., Decl. of Dallas LeDuff, Ex. A. at BST 0168.

11

letter concluded by informing plaintiff that the Union constitution gave her the right to appeal the Union's decision.

Plaintiff appealed the Union's decision to a Union Vice President.  In a letter dated August 13, 2003, the Union Vice President informed plaintiff that he had found nothing that would overturn the Union representative's decision not to proceed to arbitration.

The Union constitution provided that in the event a Union Vice President determined not to arbitrate a grievance, either the Union representative or the grievant could file a complaint in writing to the President of the Union.  If necessary, the grievant, the Union Vice President, or the Union representative could then appeal the President's decision not to arbitrate to the Executive Board of the Union.  The Executive Board's decision was then final, and the grievant would have no further right of appeal.  However, the Union representative or the Vice President could appeal the Executive Board's decision to the next Convention.

12

BST argues that plaintiff did not exhaust her administrative remedies because she did not appeal the Vice President's decision to the Union President or make the next appeal to the Executive Board.  Therefore, her ERISA § 510 claim is barred.

Plaintiff argues in response that the Court should not apply the exhaustion requirement to the facts of this case because it will not serve the policies of exhaustion.   Plaintiff contends that she carried the grievance procedure to completion and that the Union controlled whether to proceed with her claim to arbitration. Plaintiff avers that she has exhausted all remedies available to her and that any further action by her would have been futile.  She further contends that the Union decided not to proceed because arbitration was futile.[3]

Viewing the facts in the light most favorable to plaintiff, the Court finds that plaintiff did have control over the grievance and arbitration procedures and that she did not carry these procedures to completion.  The Union constitution

---

[3] Plaintiff's argument that BST is barred by collateral estoppel from re-litigating the issues with regard to exhaustion before this Court is without merit because the cases plaintiff cites to the Court where BST was a defendant do not involve the identical issues now before the Court.

13

specifically provided that the grievant (plaintiff) had the right to appeal the Union's decision not to arbitrate.  Plaintiff did make an appeal to the Union Vice President but she did not appeal the Vice President's decision to the President or Executive Board.  Contrary to plaintiff's arguments, the evidence shows that she had control over the procedures with a right to appeal but she chose not to do so. Compare Curry, 891 F.2d at 846-47 (excusing exhaustion where the company controlled the plan's administrative review procedures and exercised its control to deny the claimant meaningful access to those procedures) with Springer v. Wal-Mart Assoc. Group Health Plan, 908 F.2d 897, 901 (11th Cir. 1990) (exhaustion requirement applies where a claimant had the right to appeal her health plan's refusal to process her claims but did not do so).

Regarding plaintiff's arguments that any further action would have been futile, plaintiff must make a "clear and positive showing of futility" and may not rely on "bare allegations" to excuse the exhaustion requirement.  Id.  The test for futility is whether an employee could have availed herself of the grievance procedure, not whether her claims would succeed.  Mason v. Continental Group, Inc., 763 F.2d 1219, 1224 (11th Cir. 1985); Spivey v. Southern Co., 427 F. Supp. 2d 1144, 1155) (N.D. Ga. 2006) ("[f]utility does not arise in any instance where

14

an ERISA fiduciary has indicated that it perceives little merit in the participant's underlying claim"). Plaintiff's argument that exhaustion should be excused because the Union believed that proceeding to arbitration was futile does not meet the test of futility. Spivey, 427 F. Supp. 2d at 1155-56 (rejecting the argument that exhaustion should be excused because any grievance would have proven fruitless). Instead, the administrative review procedure existed in this case, and plaintiff could have utilized it. Id.; Garland v. Gen. Felt Indus., Inc., 777 F. Supp. 948, 952 (N.D. Ga. 1991). Therefore, plaintiff has not shown that her resort to administrative remedies would have been futile.

The Court concludes that plaintiff did not exhaust her administrative remedies because she did not follow the grievance and arbitration procedure to completion. Furthermore, plaintiff has not shown that her case contains exceptional circumstances to excuse her duty to exhaust the administrative remedies that were available to her. Therefore, the Court grants defendant's motion for summary judgment on plaintiff's ERISA § 510 claim.

15

B.  ERISA § 502(a)(1)(B)

The requirement of exhaustion of administrative remedies also applies to

plaintiff's ERISA § 502(a)(1)(B) claim for the denial of benefits. Curry, 891 F.2d

at 846.  According to the undisputed facts, Aetna reviewed and adjudicated all

STD Plan and LTD Plan benefit claims submitted by BST plan participants.  An

Aetna case manager initially reviewed benefit claims and the medical information

submitted in support of such claims.  The Aetna case manager had the authority

to grant plan benefits or to recommend their denial.  When an Aetna case manager

denied or suspended benefits, Aetna informed the participant of its action by letter.

The letter further informed the participant that the denial decision can be appealed.

Where a participant exercised her appeal right, an Aetna appeals coordinator

reviewed all of the information that the participant may have provided to

substantiate her claim of disability.  The appeals coordinator responded to the

appeal by letter, and in cases where the prior benefit denial was sustained, the

participant was advised of her right to pursue a final, second level appeal before

the appeal review committee.  The CBA provided that grievances involving the

denial of STD Plan benefits would not be presented until the claim underlying the

grievance had been heard by the appeal review committee.

16

Aetna approved plaintiff's STD Plan benefits from April 29, 2002, through June 7, 2002. By letter dated June 28, 2002, Aetna denied plaintiff STD Plan benefits effective June 19, 2002, and June 21, 2002, forward. Plaintiff appealed this denial of benefits via fax on July 10, 2002. At Aetna's request, Dr. Kristin Fiano conducted an IME on plaintiff on July 29, 2002, and reported the results of the IME to Aetna. Aetna's case manager reviewed plaintiff's case and the IME with Aetna's physician. Based on this review, Aetna reinstated plaintiff's STD Plan benefits effective June 19, 2002, and June 21, 2002, through July 29, 2002. Aetna denied benefits for the period after July 29, 2002.

BST contends that plaintiff did not bring a second-level appeal challenging Aetna's denial of benefits from July 30, 2002, forward. Therefore, plaintiff did not exhaust her administrative remedies and her ERISA § 502(a)(1)(B) claim is barred. In support of this position, BST presents the affidavit of Nadine Stolarski, the Appeals Coordinator for Aetna since 2001. Stolarski states that plaintiff did not file a second-level appeal and that her discharge from employment on September 5, 2002, would not have foreclosed a second-level appeal regarding a denial of STD Plan benefits prior to that date.

17

AO 72A
(Rev.8/82)

Plaintiff argues in response that her employment was terminated before she could appeal, thereby forcing her to proceed with her claim under the grievance procedure. In support of her position, plaintiff cites to her deposition testimony about her filing a grievance to contest her termination and the action taken on that grievance. She also cites to the letter from the Union representative informing her that the Union would not proceed with her grievance to arbitration. However, plaintiff testified that she filed the grievance to contest her termination, not to appeal the denial of her STD Plan benefits. In fact, it would have been improper for plaintiff to file a grievance to contest the denial of her STD Plan benefits because the CBA provided that grievances involving the denial of benefits under the STD Plan would not be presented until the claim underlying the grievance had been heard and resolved by the appeals review committee. Plaintiff has not offered any evidence to rebut Stolarski's affidavit, nor to support her position that her termination foreclosed her from filing an appeal of her STD Plan benefits.

BST further argues that plaintiff had the option to take STD Plan appeal leave in order to appeal the denial of benefits. In support of this, BST submits the affidavit of Dallas LeDuff who states that an employee who believes she has been improperly denied STD Plan benefits may obtain appeal leave to appeal the denial

18

of STD Plan benefits. LeDuff further states that plaintiff opted not to take such leave when Aetna denied her claim for STD Plan benefits in the fall of 2002, and instead she voluntarily returned to work.

In response, plaintiff argues BST did not implement STD Plan appeal leave until *after* the Henderson[4] and Ashley[5] cases. However, the citations plaintiff has provided for these cases confirm that these cases were decided in 2000 and 2001 respectively, *before* the incidents involving plaintiff arose in 2002. Plaintiff has provided no evidence that the appeal leave was not implemented during the time the incidents in this case occurred.

Next, plaintiff cites to her deposition testimony for the proposition that BST forced her back to work and no mention was made of leave. Although plaintiff did testify that BST forced her back to work, she also testified that she did not recall applying for STD appeal leave. Furthermore, she did not testify that no mention was made of leave or that she was unaware of the option of appeal leave.

---

[4] Henderson v. BellSouth Telecommunications, Inc., No. CV-00-S-2373-S (N.D. Ala. Oct. 3, 2000).

[5] Ashley v. BellSouth Telecommunications, Inc., No.01-10372 (11th Cir. Aug. 30, 2001).

19

Finally, plaintiff fails to explain how forcing her to return to work prohibited her from appealing the denial of benefits while back at work.

Finally, plaintiff argues that she cannot appeal the denial of benefits because Aetna did not process the case any further after BST told it to close plaintiff's file when she was terminated.  However, plaintiff does not provide any evidence that Aetna's closing of plaintiff's file prohibited her from appealing the denial of her benefits.

Accordingly, the Court finds that plaintiff has failed to meet her burden to establish that she exhausted her administrative remedies on her ERISA § 502(a)(1)(3) claim.  In addition, plaintiff has not shown that her case contains exceptional circumstances to excuse her failure to exhaust the administrative remedies that were available to her.  Therefore, the Court grants defendant's motion for summary judgment on this claim.

C. Plaintiff's Remaining Claims

As for plaintiff's LTD Plan claim, the parties agree that the LTD Plan defines a disability as one which makes a participant who has been covered under

the STD Plan for 52 weeks unable to perform certain types of work.  Plaintiff is not entitled to LTD Plan benefits because the Court has not reinstated her employment or awarded her STD benefits, and she was not covered under the STD Plan for 52 weeks.

Finally, in her amended complaint, plaintiff reserves the right to reconsider her ERISA action as one arising under Georgia law if the court of appeals determines that ERISA does not apply to the STD Plan.  In its Order dated September 21, 2005, the U.S. District Court for the Northern District of Alabama held that the BST STD and LTD Plans were an ERISA plan.  Plaintiff has presented no evidence that any court has ruled otherwise to allow her to reserve her right against BST to reconsider the allegations in her complaint.

21

AO 72A
(Rev.8/82)

Conclusion

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment [#46]; GRANTS defendant's motion for summary judgment [#47]; GRANTS defendant's motion to place documents under seal [#60]; and DISMISSES THIS CASE.

IT IS SO ORDERED, this 17th day of October, 2006.

Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia

AO 72A
(Rev.8/82)